**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **KARIM WADE,** <br>       *Plaintiff,* <br><br> **v.** <br><br> **CITY OF PHILADELPHIA d/b/a** <br> **PHILADELPHIA DEPARTMENT OF** <br> **PRISONS d/b/a DETENTION CENTER,** <br> **and MELVIN HARRIS, and OFFICER** <br> **HARRISON, and JOHN DOES 1-10,** <br>       *Defendants.* | **Civil No. 25-2063** |

**MEMORANDUM**

**Costello, J.**                                                              **February 18, 2026**

Plaintiff Karim Wade has sued the City of Philadelphia, Melvin Harris, Officer Harrison, and John Does 1-10 for violating his constitutional rights while he was detained by the Philadelphia Department of Prisons ("PDP"). Specifically, Wade claims that Defendant Harrison and/or John Does 1-10 failed to protect him against inmate violence and failed to timely provide medical care (Count I). Wade also claims that the City of Philadelphia and Defendant Harris failed to train or supervise employees to prevent inmate-on-inmate violence (Count II). Defendants have moved to dismiss the complaint. As is discussed more fully below, Wade has not sufficiently alleged a failure-to-train or supervise claim. Accordingly, the Court will grant Defendants' motion to dismiss, in part.

**I.        FACTUAL ALLEGATIONS**

Wade alleges that while detained at the Philadelphia Detention Center ("Detention Center"), he was attacked by other inmates in his dorm. Am. Compl., ECF No. 10 ¶¶ 8, 11-14. After the attack, Wade informed Harrison and/or John Does that he was attacked and that he

wanted to be transferred to a different block out of concern for his safety. *Id.* ¶ 15. In response, Harrison and/or John Does moved Wade to a different dorm on the same block. *Id.* ¶ 17. The inmates who attacked Wade allegedly warned Harrison and/or John Does that "it would be bad" if Wade was not moved off the block. *Id.* ¶ 19. In addition, Wade reported to Harrison and/or John Does that some inmates had knives and intended to harm him. *Id.* ¶ 20. Harrison and/or John Does allegedly told Wade that he could not be moved until an inmate count was completed. *Id.* ¶ 22. During that count, Wade saw inmates from his former and new dorms communicating through sign language. *Id.* ¶ 24. Shortly after, several unidentified inmates attacked Wade in his new dorm. *Id.* ¶¶ 25-26.

## II.    LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads facts sufficient to support a "reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Facial plausibility demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Assessing plausibility under *Twombly* requires three steps. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). First, the Court must "take note of the elements the plaintiff must plead to state a claim." *Id.* (internal quotations and alterations omitted). Next, the Court must "identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). Finally, the Court must accept as true all "'well-pleaded factual allegations,'" draw all reasonable inferences from those allegations, and "'determine whether they plausibly give rise to an entitlement to relief.'"

2

*Id.* (quoting *Iqbal*, 556 U.S. at 679) (alterations omitted). "If the well-pleaded facts do nut nudge the 'claims across the line from conceivable to plausible,' the Court must dismiss the complaint." *Lynch v. Tasty Baking Co.*, 23cv4445, 2024 WL 967842, at *2 (E.D. Pa. Mar. 6, 2024) (quoting *Twombly*, 550 U.S. at 570).

## III.    DISCUSSION

### A.    Wade Has Sufficiently Stated a Failure-to-Protect Claim.

As an initial matter, Defendants argue that Wade's failure-to-protect claim (Count I) against Harrison must be dismissed because Wade failed to identify the precise defendant responsible for each alleged action. For example, Wade repeatedly alleged that "Harrison and/or John Does" did or did not take certain action. Defendants contend that by pleading this way, Wade failed to sufficiently allege the personal involvement of Harrison in violating Wade's rights. *See Chavarriaga v. N.J. Dept. of Corrections*, 806 F.3d 210, 222-23 (3d Cir. 2015) (holding that a section 1983 plaintiff must allege the personal involvement of the defendant government official because there is no vicarious liability). However, Wade has not failed to allege personal action by Harrison. Instead, he has alleged that many Defendants, including Harrison, took the same action. While imprecise, Wade's allegations are sufficient to establish Harrison's involvement.

Defendants also argue that Wade's claim against Harrison should be dismissed because Wade failed to sufficiently allege that Harrison was deliberately indifferent to the alleged threats to Wade's safety. Defendants are correct that Wade is required to allege, among other elements, deliberate indifference on the part of Harrison. *See Maldonado v. Wendling*, 23-CV-4446, 2025 WL 462497, at *4 (E.D. Pa. Feb. 11, 2025) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (further citation omitted). To properly plead deliberate indifference in this context, Wade must

allege that Harrison "'knew or [was] aware of and disregarded an excessive risk to [his] health or safety.'" *Id.* at *4. Wade's allegation that he was threatened with future violence, particularly after reporting the previous assault, establishes that there was a substantial risk of serious harm to Wade's safety. *See Benson v. Delaware Cnty.*, 21-CV-2854, 2022 WL 17251288, at *2 (E.D. Pa. Nov. 28, 2022) ("Benson has alleged enough to show that he faced a substantial risk of injury by claiming that the gang terrorizing his block—which had already stabbed another inmate on the block—identified him as their next target, told other inmates about their plan to attack him and had already acquired a weapon for the attack."). Wade's additional allegations of Harrison's knowledge of that risk and his relative inaction despite that knowledge are sufficient to establish deliberate indifference for pleading purposes. *See id.* at *3 ("Benson has adequately alleged that Defendants' failure to act on their knowledge caused him harm."). Accordingly, the Court will deny Defendant's motion to dismiss Count I of the Complaint.

**B.    Wade Has Not Sufficiently Alleged a *Monell* Claim.**

Next, Defendants argue that Wade's allegations in support of his *Monell* claim (Count II) are too conclusory to satisfy pleading standards. The Court agrees. To establish liability under a failure-to-train theory, a plaintiff must show that the alleged failure to train amounted to deliberate indifference to the rights of persons with whom employees come into contact. *Forrest v. Parry*, 930 F.3d 93, 107 (3d Cir. 2019). A plaintiff alleging deliberate indifference must show that the "(1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Forrest*, 930 F.3d at 106 (citing *Carter v. City of Philadelphia*, 181 F.3d 339, 357 (3d Cir. 1999)).

4

Here, Wade failed to allege facts establishing these elements.  Usually, "a pattern of similar constitutional violations by untrained employees is necessary to demonstrate deliberate indifference for purposes of failure to train." *Thomas v. Cumberland County*, 749 F.3d 217, 223 (3d Cir. 2014) (quotation omitted).  This is because "[w]ithout notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights."  *Id.* at 222 (quotation omitted).  However, under certain circumstances, a single incident can lead to municipal liability if "the need for training [was] so obvious, that failure to do so could properly be characterized as deliberate indifference to constitutional rights even without a pattern of constitutional violations." *Id*. (quotation omitted); *see* City *of Canton, Ohio v. Harris,* 489 U.S. 378, 390 n.10 (1989).  A plaintiff's burden "in such a case is high." *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000).  To establish deliberate indifference from a single-incident violation, the plaintiff's injury must be a "highly predictable consequence" of the prison officials' failure to train its employees. *Thomas*, 749 F.3d at 225 (quoting *Connick v. Thompson*, 563 U.S. 51, 64 (2011)).

Wade failed to allege a pattern of similar constitutional violations by untrained employees.  He also failed to allege any facts establishing that his assault was a highly predictable consequence of the Defendants' failure to train.  He offered nothing to explain how prison officials were allegedly on notice of a plainly obvious need for additional or different training.  Instead, he offered threadbare legal conclusions that the PDP "had a policy, practice, or custom of failing to train and supervise employees on monitoring and re-housing detainees and inmates to prevent inmate-on inmate conflicts" and that PDP officials "knew or should have known" that employees could face such conflicts.  ECF No. 10 ¶¶ 52, 54.  These conclusory

5

allegations are insufficient to establish deliberate indifference.  Thus, his failure-to-train claim

fails.  Wade's failure-to-supervise claim fails for the same reason.  Accordingly, the Court will

grant Defendant's motion to dismiss this claim with leave to amend.

## IV.     CONCLUSION

Because Wade alleged only bare legal conclusions with respect to his *Monell* claim, the

Court will dismiss Count II without prejudice.[1]  The Court will otherwise deny the motion to

dismiss.

An appropriate Order will follow.

**BY THE COURT:**

_____
MARY KAY COSTELLO, J.

---

[1]     The Court will also dismiss Wade's failure to provide medical care claim at Wade's
request.